JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, GMAC Insurance Company ("GMAC"), appeals fromthe declaratory judgment issued by the Cuyahoga County Court of Common Pleas that declared appellee, Kaiser Foundation Health Plan of Ohio ("Kaiser"), "shall have first right of priority to the proceeds of defendant Michael Sanson's liability insurance policy with American Select Insurance Company." For the reasons stated below, we affirm in part, modify in part, and remand.
 {¶ 2} The following facts give rise to this appeal. On September 15, 2001, Shandra, Danielle, and Stephanie Wilson were all injured in an automobile accident caused by Michael E. Sanson. Shandra and Danielle suffered severe injuries in the accident, and Stephanie suffered minor injuries.
 {¶ 3} At the time of the accident, Mr. Sanson was insured by American Select Insurance Company ("American Select") under a policy with liability limits of $50,000 per person and $100,000 per accident. The Wilson family maintained uninsured/underinsured motorist coverage with GMAC that had limits of $100,000 per person and $300,000 per accident. The Wilson family also had medical health coverage for expenses through Kaiser under a General Motor's plan. Kaiser paid for medical expenses for the Wilsons. Kaiser began making payments on behalf of Shandra Wilson on October 11, 2001, and on behalf of Danielle Wilson on November 17, 2001.
 {¶ 4} Following the accident, on October 26, 2001, American Select advised GMAC that it would accept full responsibility for the accident and would offer its $100,000 policy limits in exchange for the release of its insured, Mr. Sanson. Within a week, GMAC advanced $50,000 each to Shandra and Danielle Wilson, representing American Select's policy limits of $100,000. Several months later, GMAC paid an additional $50,000 each to Shandra and Danielle Wilson, representing the difference between American Select's $50,000 per person limits and GMAC's $100,000 per person limits. Thus, in total, GMAC paid $200,000 to the Wilsons, the first $100,000 being an advancement of American Select's limits of coverage, and the second $100,000 representing GMAC's remaining policy limits available to Shandra and Danielle Wilson.
 {¶ 5} In April 2002, the Cuyahoga County Probate Court approved a settlement for Danielle Wilson, who was a minor. That same day, releases were executed for Shandra and Danielle Wilson.
 {¶ 6} In May 2002, American Select received notice that Kaiser claimed a lien for approximately $141,319 in medical services provided to the Wilsons. Kaiser did not notify GMAC of its lien until October 28, 2003. Sometime thereafter, GMAC demanded American Select to reimburse it for the $100,000 GMAC advanced, representing American Select's policy limits. American Select refused to reimburse GMAC, citing the lien claimed by Kaiser. GMAC claimed that it would not have made the advancement if it had known of Kaiser's claimed lien or subrogation interest.
 {¶ 7} On September 11, 2003, the Wilson family instituted an action against Sanson, GMAC, and Kaiser. [1] The same day, GMAC filed an action in its own name against Sanson and American Select. [2] The two cases were consolidated in the trial court.
 {¶ 8} On January 14, 2004, Kaiser filed a motion to dismiss, as well as a motion to intervene as a party plaintiff to protect and preserve its claimed subrogation interest. The trial court denied both of Kaiser's motions. Kaiser filed a motion for leave to file an answer, cross-claims and counterclaims instanter on March 18, 2004.
 {¶ 9} On January 20, 2004, GMAC filed a motion for default judgment against Kaiser with respect to a claim asserted in the Wilsons' complaint against Kaiser. At this time, GMAC did not have any direct claim against Kaiser. The matter was set for a default hearing.
 {¶ 10} On March 1, 2004, GMAC sought leave to file an amended answer and a cross-claim that asserted for the first time a claim against Kaiser.
 {¶ 11} On March 29, 2004, the trial court granted Kaiser leave to file its answer and denied GMAC's motion for default judgment. On April 9, 2004, the trial court granted GMAC's motion for leave to file its amended answer and cross-claim. Kaiser timely filed its answer to the cross-claim on May 7, 2004.
[1] The Wilson action was Cuyahoga County Common Pleas Court Case No. CV-03-510000. The plaintiffs to the action included (1) Andre Wilson, individually and as parent and natural guardian of Danielle Wilson, a minor, and Stephanie Wilson, a minor; and (2) Shandra Wilson, individually and as parent and natural guardian of Danielle Wilson, a minor, and Stephanie Wilson, a minor.
[2] Cuyahoga County Court of Common Pleas Case No. CV-03-510013.
 {¶ 12} Both GMAC and Kaiser moved for summary judgment on their cross-claims concerning subrogation rights. On October 7, 2004, the trial court issued an entry indicating that all claims asserted by the Wilsons were settled and dismissed with prejudice and that the cross-claims between Kaiser and GMAC remained pending. However, pursuant to a stipulation entered January 7, 2005, it appears that this dismissal did not include Count V of the complaint, which requested a declaratory judgment to the effect that Kaiser was not entitled to any recovery against funds recovered by the Wilsons.
 {¶ 13} The trial court entered an order on July 19, 2005 and a final judgment on December 29, 2005 that declared Kaiser had the first right of priority to the proceeds of the American Select policy. GMAC filed the instant appeal, raising two assignments of error for our review.
 {¶ 14} GMAC's first assignment of error provides as follows: "The trial court erred in failing to issue a declaratory judgment to the effect that GMAC Insurance Company had first priority to the proceeds of the American Select policy."
 {¶ 15} When a declaratory judgment action is disposed of by summary judgment, our standard of review is de novo. King v. Western ReserveGroup (1997), 125 Ohio App.3d 1, 5.
 {¶ 16} GMAC claims the trial court erred by failing to find Kaiser has no enforceable subrogation rights for the claims of Shandra and Danielle Wilson.GMAC's position is that it should be given first priority to the proceeds of the American Select policy. In making its argument, GMAC has presented three issues for our review.
 {¶ 17} The first issue presented by GMAC is whether "the doctrine of laches bars Kaiser's subrogation claim because GMAC has suffered prejudice from Kaiser's untimely pursuit of its rights."
 {¶ 18} GMAC argues that Kaiser's delay in asserting its subrogation rights prejudiced GMAC because by the time Kaiser notified American Select of its claim, GMAC had already advanced American Select's tort limits and settled the Wilsons' underinsured motorist claims.
 {¶ 19} The doctrine of laches requires "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." State ex rel. Polo v. CuyahogaCty. Bd. of Elections (1995), 74 Ohio St.3d 143, 145, 1995-Ohio-269. The central dispute in this case involves whether there was an unreasonable delay by Kaiser in asserting its rights.
 {¶ 20} GMAC states that Kaiser admitted that its right of subrogation arose on October 11, 2001, when it began making payments for the Wilsons' medical expenses. However, Kaiser did not advise American Select, the tortfeasor's insurer, of its claim until May 23, 2002.
 {¶ 21} We do not find that the approximate seven-month delay from the time Kaiser began making payments to the time it notified American Select of its claim was an unreasonable delay. As Kaiser argues, this was a reasonable amount of time for its agent, Healthcare Recoveries, to discover that the accident had been caused by another party and that the other party had insurance with American Select. Further, at the time notice was provided, American Select had not paid any money under the tortfeasor's liability coverage.
 {¶ 22} Insofar as GMAC had advanced the limits of the tortfeasor's policy, there is no evidence that Kaiser was aware of GMAC's advancement. GMAC also points out that Kaiser, despite being served with process for the present action on September 23, 2003, did not take any action in this case until January 14, 2004. On that date, Kaiser filed a motion to dismiss, as well as a motion to intervene as a party plaintiff to protect and preserve its claimed subrogation interest. We find no merit to this argument. At the time Kaiser's motions were filed, GMAC did not even have a claim pending against Kaiser. Further, the trial court ultimately permitted Kaiser to file an answer with leave to the Wilsons' complaint. Kaiser also filed a timely answer to the cross-claim that GMAC later asserted against Kaiser. We find no undue delays in the litigation of this matter.
 {¶ 23} Upon our review, we find the facts of this case do not support a finding that the time it took for Kaiser to notify the tortfeasor's carrier of its claim constituted an unreasonable delay. As a result, GMAC's laches defense cannot be established.
 {¶ 24} The second issue presented by GMAC is whether "the 'make-whole' doctrine precludes Kaiser from making a subrogation claim." We find no merit to this argument.
 {¶ 25} The "make-whole" doctrine provides that "unless the terms of a subrogation agreement clearly and unambiguously provide otherwise, a health insurer's subrogation interests will not be given priority where doing so will result in less than a full recovery to the insured."Northern Buckeye Edn. Council Group Health Benefits Plan v. Lawson
(2003), 154 Ohio App.3d 659, 664, 2003-Ohio-5196, affirmed103 Ohio St.3d 188, 2004-Ohio-4886 (emphasis added). As an initial matter, we note that the doctrine only applies to an "insured" who has not been made whole. It does not apply to an insurance company. Thus, GMAC does not have any standing to assert this claim. We also note that the Wilsons' claims were settled and dismissed with prejudice. They also signed releases with GMAC. Thus, there was some evidence tending to prove that the Wilsons were fully compensated for their injuries. SeeHawkins v. True North Energy, LLC, Portage App. Nos. 2002-P-0098, 2002-P-0101, 2002-P-0102, 2004-Ohio-3341.
 {¶ 26} Regardless of their ability to recover, the pertinent issue presented is whether GMAC and Kaiser have enforceable subrogation interests. GMAC and Kaiser each dispute whether the other has any enforceable subrogation rights in this matter. GMAC claims that the Kaiser plan only requires "the insured" to reimburse Kaiser for any amount the insured receives and does not give Kaiser any priority rights. Kaiser asserts that R.C. 3937.18(J) sets forth the right of an underinsured carrier to be reimbursed only from the person to whom payment is made when the injured party recovers from the person at fault. Kaiser also states that GMAC's release and trust agreements do not convey any direct right to sue the tortfeasor. Essentially, each party asserts the other may not claim subrogation rights in a direct action against the tortfeasor or his insurance company and may recover only from its insured, the Wilsons, in the event they recover from the tortfeasor.
 {¶ 27} Subrogation interests have been found to arise both under contract and through equity. As stated in Hawkins v. True North Energy,LLC, Portage App. Nos. 2002-P-0098, 2002-P-0101, 2002-P-0102,2004-Ohio-3341: "'The right of an insurer to be subrogated to the right of the insured arises either from the right of conventional subrogation, that is subrogation by agreement between the parties, or equitable subrogation by operation of law. Conventional subrogation is premised on the contractual obligations of the parties, either express or implied. Contractual subrogation clauses in an insurance policy are controlled by contract principles, including those of interpretation of the contract language. * * * Equitable subrogation, on the other hand, arises when there is not agreement creating a contractual obligation to subrogate.'" Id., quoting Erie Ins. Co. v. Kaltenbach (1998), Ohio App.3d 542, 546 (internal citations and quotations omitted). We also recognize that subrogation interests may arise by law.
 {¶ 28} A review of the record in this case reflects that Kaiser's certificate of coverage contains an express subrogation assignment to directly seek recovery from the responsible party. The subrogation provision provides the following: "To the extent we provide or pay benefits for covered Medical Services, your legal rights to claim or receive compensation damages or other payment for that same illness or injury is transferred to us." We find that this provision does confer upon Kaiser a valid subrogation interest that may be pursued against the tortfeasor or his insured directly.
 {¶ 29} With respect to GMAC, no such direct right is provided by R.C.3937.18(J) or the release and trust agreements. However, we do find that such a right arises through equitable subrogation. The facts of this case reflect that GMAC made an advancement of American Select's policy limits after American Select advised GMAC that it would accept full responsibility for the accident and would offer its policy limits. We believe that under the circumstances of this case, GMAC has an equitable right to subrogation, which may be pursued by GMAC directly.
 {¶ 30} The third issue presented by GMAC is whether "GMAC has first priority to the proceeds of the American Select policy." Here again, each party argues that they should be entitled to priority to the proceeds of the American Select policy.GMAC argues that allowing Kaiser to assert subrogation rights before GMAC would contravene the purposes of R.C. 3937.18(J). However, we fail to find any authority that suggests such priority is to be conferred. Likewise, we are not persuaded by Kaiser's "first in time, first in right" argument, for which Kaiser has provided no authority.
 {¶ 31} Under the circumstances of this case, we find both parties have enforceable subrogation rights, and neither party has clearly established a right to priority; therefore, the trial court erred in awarding priority to Kaiser. Accordingly, we conclude that principles of equity require a finding that GMAC and Kaiser have equal rights to subrogation with respect to the proceeds of the American Select policy and modify the decision of the trial court accordingly.
 {¶ 32} GMAC's first assignment of error is overruled, with the exception of the modification to the trial court decision noted herein.
 {¶ 33} GMAC's second assignment of error provides the following: "The trial court erred in failing to enter a default judgment against Kaiser Foundation Health Plan of Ohio."
 {¶ 34} If a defendant moves for leave to answer after the date the answer is due, Civ.R. 6(B)(2) permits the trial court to grant the defendant's motion"where the failure to act was the result of excusable neglect[.]" Civ.R. 6(B)(2). "A trial court's Civ.R. 6(B)(2) determination is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion." State ex rel. Lindenschmidt v. Board of Comm'rs,72 Ohio St.3d 464, 465, 1995-Ohio-49. In determining whether neglect is excusable or inexcusable, the Ohio Supreme Court has explained that "[the court] must take into consideration all the surrounding facts and circumstances, and courts must be mindful of the admonition that cases should be decided on their merits, where possible, rather than procedural grounds. Although excusable neglect cannot be defined in the abstract, the test for excusable neglect under Civ.R. 6(B)(2) is less stringent than that applied under Civ.R. 60(B)." Id. (citations omitted).
 {¶ 35} The record in this case reflects that GMAC filed its motion for default after Kaiser had filed a motion to dismiss. The motion for default pertained to the Wilsons' complaint. GMAC had no claims pending against Kaiser at the time the motion was filed. Following the denial of the motion to dismiss, the trial court granted Kaiser leave to file an answer. The Wilsons had not sought default against Kaiser. Also, Kaiser did participate in a case management conference held by the court in January 2004. In considering all the surrounding facts and circumstances in this case, we find the trial court did not abuse its discretion in granting Kaiser leave to file its answer.
 {¶ 36} GMAC's second assignment of error is overruled.
 {¶ 37} This cause is affirmed in part, modified in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellees share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, PRESIDING JUDGE
ANTHONY O. CALABRESE, JR., J., and JOSEPH J. NAHRA, J., * CONCUR
* Sitting by assignment: Judge Joseph J. Nahra, retired, of the Eighth District Court of Appeals